**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WELLS FARGO BANK, N.A., | ) |
| Plaintiff, | ) |
| | ) Case No.: 2:13-cv-1472-GMN-NJK |
| vs. | ) |
| | ) |
| ALIREZA KAVEH, an individual; ALIREZA KAVEH, as Trustee of the Alireza Kaveh Family Trust; JPA INVESTMENTS, LLC, a Nevada limited liability company; JOCELYNE ABRAR, an individual; JOCELYNE ABRAR, as Trustee of The Jocelyne Abrar Trust; ALI KAVEH aka Alireza Kaveh, Sr., an individual; MOLOUK KAVEH; and MOLOUK KAVEH, as Trustee of The Kaveh Family Trust, | ) **ORDER** |
| Defendants. | ) |

Pending before the Court is Plaintiff Wells Fargo Bank's Motion for Partial Summary Judgment (ECF No. 56) filed on September 22, 2015.  On November 12, 2015, Defendants Jocelyn Abrar and JPA Investments filed their Opposition and Cross Motion for Summary Judgment, which was joined by Alireza Kaveh (collectively, the "Defendants"). (ECF Nos. 63 and 65).  On December 10, 2015, Wells Fargo filed its Reply and Opposition. (ECF No. 68).  For the reasons addressed below, the Court **Grants** Wells Fargo's Motion and **Denies** the Defendants' Cross Motion.

### I. BACKGROUND

This case arises from a guaranty obligation the Defendants entered into with Wells Fargo.  On March 16, 2009, Craig 95, LLC ("Craig 95") and Wells Fargo entered into a loan agreement (the "Loan") in the principal amount of $7,527,000. (Austin Decl. ¶ 7, ECF No. 57).

The Loan was secured by a plot of partially-developed commercial real property located in Clark County, Nevada, commonly known as the Craig Marketplace (the "Property") (Compl. ¶ 17, ECF No. 1). On March 16, 2009, Alireza Kaveh, as an individual; Alireza Kaveh, as Trustee of the Alireza Kaveh Family Trust; JPA Investments, L.L.C.; Jocelyne Abrar, as an individual; and Jocelyne Abrar, as Trustee of the Jocelyne Abrar Trust agreed to guaranty the Loan. (Repayment and Completion Guaranty, Ex. 4 to Austin Decl., ECF No. 57). The Loan required the Defendants or Craig 95 to satisfy its repayment terms in full by the maturity date, March 1, 2011. (Austin Decl. ¶ 17, ECF No. 57). In the Guaranty, the Defendants waived their rights under Nevada's One Action Rule, thereby allowing Wells Fargo to sue the Defendants before foreclosing on the Property. (Repayment and Completion Guaranty § 6, Ex. 4 to Austin Decl., ECF No. 57).

The Defendants failed to satisfy the indebtedness by the maturity date. (Austin Decl. ¶ 19, ECF No. 57). Wells Fargo filed its Complaint against the Defendants on Aug 16, 2013, asserting multiple claims of breach of guaranty. (Compl. pp. 9-12, ECF No. 1). On or about March 27, 2015, the Property was sold at a trustee's sale for $3,550,000.00. (Austin Decl. ¶ 31, ECF No. 57). However, Wells Fargo claims that this amount fails to satisfy the full indebtedness of $10,660,838.65 that was owed by Defendants as of the date of the trustee's sale. (MSJ 2:12-15, ECF No. 56).

Wells Fargo filed the instant Motion for Partial Summary Judgment ("Motion") on September 22, 2015, asking the Court to find that:

(1) the Defendants are jointly and severally liable for breach of contract as guarantors of the Loan;

(2) as of March 25, 2015, prior to the trustee's sale, the indebtedness was the sum of $10,660,838; and

(3) interest on any deficiency should accrue at the rate of 9.5% per annum. (MSJ 9:12-19, ECF No. 56).

In their Opposition, the Defendants did not dispute their status as guarantors of the Loan, nor did they contest Wells Fargo's calculation as to the amount of indebtedness.  Instead, Defendants argued that Wells Fargo is not entitled to a deficiency judgment, because it failed to give notice as required by NRS 40.455. (Opp. 2:6-7, ECF No 63).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In

contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

The Nevada Revised Statutes include provisions which both allow lenders to obtain a deficiency judgment after a foreclosure sale and provide some protection to the borrower against abuse of this right. NRS 40.455 states in relevant part: "[U]pon *application* of the . . . beneficiary of the deed of trust *within 6 months* after the date of the foreclosure sale *and after the required hearing*, the court shall award a deficiency judgment to . . . the beneficiary of the deed of trust . . . ." (Emphasis added). Further, the Nevada Supreme Court has noted that "NRS 40.455(1) is an anti-deficiency statute that derogates from the common law, and this court construes such provisions narrowly, in favor of deficiency judgments." *Mardian v. Greenberg Family Trust,* 359 P.3d 109, 112 (Nev. 2015) (citations omitted).

Wells Fargo has provided testimony and exhibits that show that the "[Defendants] have failed and refused to pay the amounts due and owing under the Loan Documents as obligated under the Guaranty." (Austin Decl. ¶ 20, ECF No. 57). The Defendants did not provide any rebutting evidence or testimony in response to Wells Fargo's Motion. As such, the efficacy of Wells Fargo's Motion is contingent on whether or not Wells Fargo's Motion satisfied the role of an "application" required under NRS 40.455.

The Court will first address the joint and several liability of the Defendants for the breach of guaranty claim, and will subsequently discuss the amount of the indebtedness and the appropriate interest rate to apply to a deficiency judgment. The Court will then assess Defendants' assertions regarding the sufficiency of Wells Fargo's application.

### *1. Joint and Several Liability for Breach of Contract*

Wells Fargo asserts and the Defendants do not refute that the loan documents and guaranty agreements are valid and enforceable contracts, that the Defendants breached these contracts by failing to pay the agreed-upon amount, and that the Defendants are joint and severally liable for the breach. Accordingly, as the Defendants have failed to raise a genuine

dispute of material fact, the Court finds that the Defendants will be joint and severally liable to Wells Fargo for an amount to be determined at a hearing held pursuant to NRS 40.457(1).

### *2. Indebtedness and 9.5% Interest Rate*

Pursuant to NRS 40.459, the "amount of indebtedness" as of the date of the foreclosure sale must be established to determine the amount of a deficiency judgment.  NRS 40.451 allows the following items to be included in "indebtedness": the principal balance owed, interest as "the principal balance of the obligation . . . on real property, together with all interest accrued and unpaid prior to the time of foreclosure sale, all costs and fees of such a sale, all advances made with respect to the property by the beneficiary, and all other amounts secured by the mortgage . . . in favor of the person seeking the deficiency judgment."

Here, there is no factual dispute as to the amount of indebtedness before the trustee's sale.  As of March 25, 2015, the indebtedness was $10,660,838.65, exclusive of attorneys' fees and costs of suit. (Austin Decl. ¶ 27, ECF No. 57).

Wells Fargo is seeking interest after the default at a rate of 9.5% and requests that interest on any deficiency judgment be calculated at 9.5% as well.  Pursuant to NRS 99.050 "[P]arties may agree for the payment of any rate of interest on money due or to become due on any contract . . . and for any other charges or fees."  Pursuant to the Loan, the parties in this case agreed that interest would accrue at a rate of not less than 4.5% per annum. (Promissory Note ¶ 1, Ex. 1 to Austin Decl., ECF No. 57).  However, the Loan also provides that, upon default, the rate would increase by 5% per annum, setting the total annual interest rate following a default at 9.5%. *See* (*Id.* ¶ 8).

The Defendants do not specifically dispute any of the arguments set forth in Wells Fargo's Motion.  Indeed, the evidence on the record demonstrates, and the Court thus finds, that the Defendants breached their guaranty; that the amount of indebtedness as of March 25, 2015

was $10,660,838.65; and that interest on a deficiency judgment, to be calculated after a hearing pursuant to NRS §§ 40.457, 40.459, will accrue at 9.5%.

### *3. Sufficiency of the Application*

NRS 40.455 requires that a plaintiff apply to the Court before it can obtain a deficiency judgment. Although the statute does not specify the precise form in which the application must appear, the Nevada Supreme Court has provided some guidance. "[A] party seeking a deficiency judgment must file the application particularizing the reasons for the requested judgment." *Lavi v. Eighth Jud. Dist. Ct.*, 325 P.3d 1265, 1267 (Nev. 2014). "The statute . . . does not state that [an application] must be specifically labeled as a deficiency judgment application . . . ." *Walters v. Eighth Judicial Dist. Court of State ex rel. Cty. of Clark,* 263 P.3d 231, 234 (Nev. 2011).

The Nevada Supreme Court has held that several different types of filings may qualify as an application pursuant to NRS 40.455. *Id.* at 233. For example, in *Walters*, the Nevada Supreme Court found that a bank's breach of guaranty counterclaim, contained within its answer, served as an application because the bank had sufficiently framed the relevant issues in its initial filings and a subsequent motion for summary judgment. *Id.* at 233. In that case, the counterclaim together with the motion for summary judgment were sufficient, in concert, to serve as an application. *Id.* at 234. The *Walters* court recognized, as this Court does, that a motion for summary judgment is not made in a vacuum. Indeed, the Court may consider the contents of a summary judgment motion, as contextualized by the claims set forth in a complaint, in determining whether a plaintiff has sufficiently applied for a deficiency judgment.

In its Complaint, Wells Fargo alleges that "[t]he fair market value of the [property] partially securing the [Loan] is significantly less than and insufficient to satisfy the amounts due and owing under the [guaranty]." (Compl. ¶ 72, ECF 1). The Property was sold for $3,550,000.00, which was insufficient to satisfy the $10,660,838.65 owing at the time of the

trustee's sale. (Austin Decl. ¶¶ 27, 31, ECF No. 57).  Further, within six months of the trustee's sale Wells Fargo filed its instant Motion, which states plainly and succinctly, "This is a post-foreclosure deficiency action." (MSJ 2:8, ECF No. 56).  Like the bank in *Walters*, which based its deficiency application on multiple filings, here Wells Fargo began laying the foundation for a deficiency judgment with its Complaint.  Also similar to the bank in *Walters*, Wells Fargo moved for summary judgment on its breach of guaranty claims within six months of the foreclosure sale.  As such, the Court finds that, just like the bank in *Walters*, Wells Fargo's initial claim and subsequent Motion for Summary Judgment collectively satisfy the "application" requirement under NRS 40.455.

The Defendants further argue that the application is insufficient because although Wells Fargo references deficiency a number of times, a hearing under NRS 40.457 is not requested in Wells Fargo's Motion for Summary Judgment. (Opp. 2:19-20, ECF No 63).  However, Wells Fargo correctly points out that the requirements set forth in the statute do not include requesting a hearing. (Reply 4:7-9, ECF No. 68).  Pursuant to NRS 40.455 a hearing must be held to determine fair market value before the issuance of a deficiency judgment, but this section contains no requirements specifying when such a hearing must be requested.  Accordingly, the fact that Wells Fargo did not specifically request a hearing does not render its application insufficient pursuant to NRS 40.455.

Because the filings in the present case, taken together, give notice that Wells Fargo applied to the Court for a deficiency judgment, Wells Fargo's Motion for Partial Summary Judgment will be **granted** and Defendants' Cross Motion for Summary Judgment will be **denied**.[1]

---

[1] The Defendants claim that granting Wells Fargo's Motion would be inappropriate because Wells Fargo has not demonstrated that it is not seeking a double recovery. (Opp. 4:21-25, 5:17-20, ECF No 63).  However, Defendants fail to point to any evidence which indicates that Wells Fargo intends to obtain a double recovery in this case.  Furthermore, as noted above, granting Wells Fargo's Motion will not result in a final judgment, so

///

IV.     **CONCLUSION**

**IT IS HEREBY ORDERED** that the Motion for Partial Summary Judgment (ECF No. 56) filed by Plaintiff Wells Fargo Bank is **GRANTED**. The Cross Motion for Summary Judgment (ECF No. 63) filed by the Defendants is **DENIED.**

**IT IS FURTHER ORDERED** that the parties shall have thirty (30) days from entry of this order to file opening briefs of not more than fifteen (15) pages concerning the fair market value of the property at issue at the time of the trustee's sale. The parties shall then have ten (10) days after the filing of opening briefs to file response briefs of not more than ten (10) pages. Thereafter, the Court shall set a fair market valuation hearing pursuant to NRS 40.457(1).

**DATED** this __8__ day of April, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

---

there is no risk of double recovery at this time. Thus, the Defendants' bare assertion that Wells Fargo might seek double recovery is insufficient to overcome Wells Fargo's Motion for Partial Summary Judgment.