# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| WELLS FARGO BANK, N.A., ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:13-cv-01472-GMN-NJK |
| vs. ) | |
| ) | **ORDER** |
| ALIREZA KAVEH, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter involves Wells Fargo Bank, N.A.'s ("Wells Fargo's") post-foreclosure deficiency action against Alireza Kaveh, *et al.* ("Defendants"). (*See* Compl, ECF No. 1).  On April 8, 2016, the Court granted Wells Fargo's Partial Motion for Summary Judgment and, in accordance with Nevada law, set a hearing to determine the fair market value of the property at the time of the foreclosure sale. (ECF No. 69).

Beginning on September 19, 2016, the Court heard representations from the parties and their respective expert witnesses on this issue. (ECF Nos. 87, 89).  At the conclusion of the hearing, the Court ordered that both parties submit closing briefs to the Court.  Upon review of all relevant evidence in the record,[1] the Court now finds that the fair market value of the property at the time of the foreclosure sale was $4,020,000.[2]

---

[1] Wells Fargo filed a Motion to Admit the exhibits marked 2, 3, and 5 into evidence. (ECF No. 92).  Defendants do not oppose the admission of exhibit 5, which includes an aerial photograph of the Property.  However, Defendants argue that exhibit 2—which includes a Reply Brief, Petra Latch Appraisal Report, and excerpts from Charles Jack Deposition—should be excluded.  Wells Fargo agreed at the hearing to remove the briefs from the exhibits, and therefore this argument is moot.  Furthermore, Wells Fargo does not oppose excluding the deposition transcript. (ECF No. 98).  With respect to the Appraisal Report, the parties stipulated on the record to the admission of the expert reports.  To the extent Defendants argue their expert did not have an opportunity to respond to all of the arguments raised in the Appraisal Report, the Court is unpersuaded.  Defendants had ample

Page 1 of 6

## I. __BACKGROUND__

This case arises from a guaranty obligation the Defendants entered into with Wells Fargo.  On March 16, 2009, Craig 95, LLC ("Craig 95") and Wells Fargo entered into a loan agreement (the "Loan") in the principal amount of $7,527,000. (Austin Decl. ¶ 7, ECF No. 57). The Loan was secured by a plot of partially-developed commercial real property located in Clark County, Nevada, commonly known as the Craig Marketplace (the "Property"). (Compl. ¶ 17).  On March 16, 2009, Defendants agreed to guaranty the Loan. (Repayment and Completion Guaranty, Ex. 4 to Austin Decl., ECF No. 57).  The Loan required the Defendants or Craig 95 to satisfy its repayment terms in full by the maturity date, March 1, 2011. (Austin Decl. ¶ 17).  In the Guaranty, the Defendants waived their rights under Nevada's One Action Rule, thereby allowing Wells Fargo to sue the Defendants before foreclosing on the Property. (Repayment and Completion Guaranty § 6, Ex. 4 to Austin Decl.).

The Defendants failed to satisfy the indebtedness by the maturity date. (Austin Decl. ¶ 19).  Wells Fargo filed its Complaint against the Defendants on August 16, 2013, asserting multiple claims of breach of guarantee. (Compl. pp. 9–12, ECF No. 1).  On or about March 27,

---

opportunity to respond to criticisms raised against their expert witness.  Moreover, both sides' appraisal reports contain lengthy evaluations and not every detail was raised at the hearing.  Defendants are not uniquely prejudiced by this fact.  In general, the Court is afforded wide discretion in determining whether to admit or exclude evidence. *Hamling v. United States*, 418 U.S. 87, 108 (1974).  As this is a bench trial, the Court is more than equipped to appropriately adjust the weight and credibility of the admitted evidence.  Accordingly, the Court grants Wells Fargo's Motion to the extent detailed in Wells Fargo's Reply. (Reply to Mot. to Admit 4:12–16, ECF No. 98).

[2] Defendants filed a Motion for Reconsideration on the Court's previous determination that it has subject matter jurisdiction over this action. (ECF No. 102).  Specifically, Defendants argue that diversity does not exist due to Wells Fargo's recent admission in a separate case that it is a citizen of California. (Mot. for Reconsideration 4:15–17).  To establish diversity jurisdiction, complete diversity must be present at the time of removal. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  Once properly invoked, a change in a party's citizenship does not destroy diversity. *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1132 (9th Cir. 2002).  Here, it is immaterial whether Wells Fargo has subsequently alleged different citizenship in an unrelated case.  Diversity jurisdiction was properly established at the time of removal in this case.  Accordingly, the Court denies Defendants' Motion.

2015, the Property was sold at a trustee's sale for $3,550,000.00. (Austin Decl. ¶ 31). However, Wells Fargo claimed that this amount failed to satisfy the full indebtedness of $10,660,838.65 that was owed by Defendants as of the date of the trustee's sale. (Pl.'s MSJ 2:12–15, ECF No. 56).

On April 8, 2016, the Court granted Wells Fargo's Partial Motion for Summary Judgment.  In this Order, the Court determined that: (1) Wells Fargo sufficiently applied for a deficiency judgment; (2) the Defendants are jointly and severally liable for the debt owed to Wells Fargo; and (3) any interest on a deficiency judgment would accrue at 9.5%.  Pursuant to N.R.S. 40.457(1), the Court held a hearing to determine the fair market value of the property for purposes of calculating the deficiency judgment.

## II.   LEGAL STANDARD

Nevada law defines fair market value "as the price which a purchaser, willing but not obliged to buy, would pay an owner willing but not obliged to sell, taking into consideration all the uses to which the property is adapted and might in reason be applied. *Unruh v. Streight*, 615 P.2d 247, 249 (Nev. 1980).  In the context of a foreclosure sale, however, the sale price is not necessarily an indication of a property's fair market value. *See Halfon v. Title Ins. & Trust Co.*, 634 P.2d 660, 661 (Nev. 1981).  In those cases, fair market value is determined by the court. *Branch Banking & Trust Co. v. Smoke Ranch Dev., LLC*, 92 F. Supp. 3d 998, 1001 (D. Nev. 2015).

Nevada Revised Statute § 40.457 governs the procedure for determining the fair market value.  It states that "before awarding a deficiency judgment . . . the court shall hold a hearing and shall take evidence presented by either party concerning the fair market value of the property sold as of the date of foreclosure sale or trustee's sale." Nev. Rev. Stat. § 40.457(1). An evidentiary hearing is mandatory. *Branch Banking & Trust Co. v. Pebble Creek Plaza, LLC*,

46 F. Supp. 3d 1061, 1076 (D. Nev. 2014) ("In no unclear terms, NRS § 40.457(1) requires the Court to hold a hearing and consider all relevant evidence in determining the fair market value of the property.").

At the hearing, the court may "consider all relevant evidence in determining the value of the property." *Unruh*, 615 P.2d at 249; *Tahoe Highlander v. Westside Fed. Sav.*, 588 P.2d 1022, 1024 (Nev. 1979). Additionally, "[u]pon application of any party made at least 10 days before the date set for the hearing the court shall, or upon its own motion the court may, appoint an appraiser to appraise the property sold as of the date of the foreclosure sale or trustee's sale." Nev. Rev. Stat. § 40.457(2). To support a calculation of fair market value, a party must provide evidence "which a reasonable mind might accept as adequate to support [its] conclusion." *State Emp't Sec. Dep't v. Hilton Hotel Corp.*, 729 P.2d 497, 498 (Nev. 1986).

## III.   **DISCUSSION**

In support of their respective valuations, each party submitted appraisal reports created by expert witnesses. Wells Fargo identified Petra Latch, MAI, as its expert valuation witness. Ms. Latch prepared both a self-contained appraisal report (the "Latch Appraisal") and a rebuttal report (the "Latch Rebuttal"). According to Ms. Latch, the relevant fair market value of the Property at the time of the foreclosure sale was $4,020,000.00. (*See* Ex. 1, Latch Appraisal p. 145)

Defendants identified Charles Jack, MAI, as their expert valuation witness. Mr. Jack also prepared an appraisal report (the "Jack Appraisal"). According to Mr. Jack, the relevant fair market value at the time of the foreclosure sale was $8,450,000.00. (*See* Ex. 100, Jack Appraisal p. 106). Both experts testified as to their appraisals at the fair market value hearing.[3]

---

[3] Alireza Kaveh, in his capacity as defendant and the principal owner of the Property prior to foreclosure, also testified as to his valuation opinion.

Having reviewed the parties' evidence and considered the arguments presented in both their papers and at the fair market value hearing, the Court finds that the fair market value of the Property at the time of foreclosure was $4,020,000.00.  This determination is based on "all the relevant evidence." *See Tahoe Highlander*, 588 P.2d at 1024.  In reaching this conclusion, the Court finds that Mr. Jack's valuation assessment lacks any credibility.  Notably, both in the Jack Appraisal and his accompanying testimony, Mr. Jack repeatedly utilized valuation factors that were inadequately supported, confusing, and inconsistent.  For example, Mr. Jack utilized five comparable properties to derive a value for the vacant lot located on the Property at issue. (*See* Ex. 100, Jack Appraisal p. 61).  In applying these "comparables," however, the Jack Appraisal included only minimal consideration of important valuation factors like access, visibility, and exposure. (*Id.*).  In contrast, the Latch Appraisal and accompanying testimony provided specific details on how each of these types of factors affect the comparables in relation to the Property. (*See, e.g.,* Ex. 1, Latch Appraisal p. 72–79).

When pressed to explain why the Jack Appraisal used or omitted certain factors, Mr. Jack provided unconvincing and conclusory responses.  At the hearing, Mr. Jack seemed to suggest that his failure to properly account for certain factors stemmed from a lack of sufficient compensation.  Ultimately, Mr. Jack's seemingly rogue adjustments almost always favored a higher valuation of the Property.  Such bias is further evidenced in the Jack Appraisal itself, which states that the report was created for "deficiency action litigation purposes." (Ex. 100, Jack Appraisal p. 4).

In contrast to Defendants' expert appraisal, the Court finds that the Latch Appraisal and accompanying testimony by Ms. Latch provide an accurate valuation of the Property.  The report is detailed, logical, and well-reasoned.  Accordingly, and based on the record, the Court finds that the fair market value of the Property at the time of foreclosure was $4,020,000.00.

**IV.    CONCLUSION**

**IT IS HEREBY ORDERED** that the fair market value of the Property at the time of the foreclosure sale is set at $4,020,000.00.

**IT IS FURTHER ORDERED** that the Clerk shall enter a final deficiency judgment in favor of Wells Fargo and in the amount of $6,640,838.65, with interest accruing at a rate of 9.5% per annum, beginning on March 26, 2015, and continuing until paid in full.

**IT IS FURTHER ORDERED** that Wells Fargo's Motion for Leave to File Exhibits, (ECF No. 92), is **GRANTED** in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Defendants' Motion for Reconsideration, (ECF No. 102), is **DENIED**.

The Clerk is instructed to close the case.


**DATED** this ___31___ day of March, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

Page 6 of 6